# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**BENJAMIN M.[1]**,

        Plaintiff,

  v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:20-cv-1058-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Mark A. Manning, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Benjamin M. (Plaintiff) brings this action pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

---

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

finding that Plaintiff was not disabled under the meaning of the Social Security Act (Act). For the following reasons, the Commissioner's decision is REVERSED AND REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

On January 5, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.

Plaintiff alleged disability beginning on January 1, 2014. Plaintiff was born on April 10, 1975 and was 38 years old on the alleged disability onset date. The Commissioner denied both claims initially on September 27, 2017, and upon reconsideration on January 3, 2018. Plaintiff then filed a request for a hearing on January 30, 2019. A hearing was held on May 20, 2019 in Eugene, Oregon before an Administrative Law Judge (ALJ).

The ALJ issued a decision on June 5, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged disability onset date through the date of the ALJ's decision. Plaintiff requested review of the hearing decision, which the Appeals Council denied in May 2020. The ALJ's decision therefore became the final decision of the agency, from which Plaintiff seeks review.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ issued findings that Plaintiff was not under a disability, as defined in the Act,

from January 1, 2014 through June 5, 2019. AR 28. After finding that Plaintiff met the insurance

requirements, the ALJ engaged in the sequential analysis. *See* AR 29. At step one of the

sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity for the relevant period. *Id.* At step two, the ALJ found Plaintiff suffered severe,

medically determinable impairments of epididymitis, depression, and personality disorder.

AR 29-30. At step three, the ALJ found that these impairments did not meet or equal the severity

of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30. Next, the ALJ

found that Plaintiff had the residual functional capacity to perform a range of light work as

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except he can understand, remember, and

carry out no more than simple routine tasks involving no more than occasional contact with

coworkers and supervisors." AR 31. The ALJ also concluded "[Plaintiff] must avoid contact with

the general public." *Id.* Moving to step four, the ALJ found that Plaintiff could not perform any

past relevant work because his past relevant work exceeded the residual functional capacity.

AR 34. At step five, the ALJ found Plaintiff retained the ability to perform the requirements of other jobs existing in significant numbers in the national economy. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) improperly rejecting Plaintiff's subjective symptom testimony; (B) improperly rejecting the "other" medical source opinion of Plaintiff's mental health counselor; and (C) improperly rejecting the competent lay witness statements of Plaintiff's spouse. Plaintiff argues that evidence from each source should be credited as true and the Court should remand this case for an award of benefits.

### A.  Plaintiff's Subjective Symptom Testimony

#### 1.  Applicable law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelte*r, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). An ALJ must identify the testimony that is found not credible and link that testimony to the particular parts of the record supporting the non-credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Failure to do so is legal error. *Id.*

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

Plaintiff reported physical ailments including hip tendonitis, arthritis in his hands, and frequent urination. AR 316. He also reported pain stemming from past injuries including a torn left kneecap and torn shoulder rotator cuffs. *Id.* Plaintiff stated that these injuries cause him pain when he lifts, bends, and crouches, so much so that he "can barely stand." AR 319. Plaintiff also reported debilitating psychological symptoms including anxiety with panic, hypervigilance, night terrors, attention deficits, slow learning abilities, and PTSD. AR 316. Plaintiff further reported an inability to get along with authority figures and answered "yes" to an inquiry of whether he had been fired because of problems getting along with other people. AR 321. He claimed that he would "shut down or explode" in response to stress. AR 322. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 32. But "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

### a. Specificity of the ALJ's reasons

Plaintiff first argues that the ALJ failed to identify and link the testimony that he found inconsistent with the record to particular parts of the record supporting his determination, constituting legal error. The Court agrees, as a threshold matter, that the ALJ was insufficiently specific in his reasoning for discounting Plaintiff's subjective symptom testimony.

A reviewing court should "not fault the agency merely for explaining its decision with 'less than ideal clarity,'" however, "we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Here, the ALJ did not specify "which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. He did not explain what portions of the medical record conflicted with which portions of Plaintiff's subjective symptom testimony about Plaintiff's psychological symptoms. The ALJ recounted medical record evidence, but he did not use that evidence to evaluate Plaintiff's subjective symptom testimony about his psychological symptoms or link the medical evidence to any specific testimony. This was legal error. *See Brown-Hunter*, 806 F.3d at 489 (holding that a general rejection of claimant's testimony was an insufficient basis for an adverse credibility determination and that the ALJ committed legal error when she did not specify what testimony she rejected and why); *Treichler*, 775 F.3d at 1102-03 ("The ALJ did not . . . specifically identify the testimony he found not credible. . . . This was error and falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based.") (quotation marks omitted); *Ammie B. v. Saul*, 2020 WL 1984894, at *8 (D. Or. Apr. 27, 2020) (concluding that summarizing the

medical record but failing to link it to any specific testimony is legal error). This error, alone, is reason enough to remand this case.

### b.  Dr. Belcher's clinical observations and medical opinion

Plaintiff next argues that even if the ALJ had identified portions of Plaintiff's testimony he found not credible, the reasons he provided for rejecting Plaintiff's subjective symptom testimony were legally insufficient. Although not explicitly stated, the Court ascertains two reasons the ALJ relied on to reject Plaintiff's subjective symptom testimony: (1) inconsistency between Plaintiff's symptom testimony and the clinical observation and medical opinion of state agency consulting examining psychologist, Dr. Paula Belcher, Ph.D.; and (2) inconsistency between Plaintiff's testimony and his reported activities of daily living. The Commissioner has waived arguments about inconsistent activities of daily living,[2] therefore, the Court will review only the ALJ's reasoning for rejecting Plaintiff's subjective symptom testimony as it pertains to Dr. Belcher's clinical observations and medical opinion.

The ALJ discussed first Dr. Belcher's clinical diagnoses, stating that Dr. Belcher concluded Plaintiff "exhibited symptoms of a persistent depressive disorder and an antisocial

---

[2] The Commissioner does not expressly concede that Plaintiff's activities of daily living are not inconsistent with his subjective psychological symptoms. The Commissioner, however, did not defend the ALJ's reason or respond to Plaintiff's arguments challenging this reason. The Commissioner thus has waived any argument that the ALJ properly provided Plaintiff's activities of daily living as a reason to reject Plaintiff's symptom testimony. *See, e.g.*, *Megan, S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient; *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues); *see generally United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief.").

personality disorder." AR 33. The ALJ implied that these clinical diagnoses were inconsistent with Plaintiff's symptom testimony; the Court disagrees.

First, the ALJ did not fully describe Dr. Belcher's diagnoses. Dr. Belcher reported diagnoses of Persistent Depressive Disorder with Anxious Distress, Intermittent Explosive Disorder, "features of antisocial personality disorder," as well as Cannabis, Tobacco, and Stimulant Use disorders. AR 832. A diagnosis of Intermittent Explosive Disorder, which the ALJ ignored, is consistent with Plaintiff's reported complaints of inability to control his anger and interact appropriately in a workplace environment. *See* AR 90-91, 321. The ALJ discussed only Dr. Belcher's clinical diagnoses that provided little support to Plaintiff's symptoms; he ignored a clinical diagnosis that otherwise supported Plaintiff's symptom testimony. The Court finds that this reason was not based on the diagnostic record as a whole and is thus not a clear and convincing reason based on substantial evidence to reject Plaintiff's subjective symptom testimony. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (concluding there was a lack of substantial evidence to support the ALJ's adverse credibility findings when the ALJ selectively quoted from treatment records and misattributed statements to the treating physician); *Tally v. Astrue*, 400 Fed. App'x. 167, 169 (9th Cir. 2010) (concluding ALJ's reasons were unconvincing because they did not account for evidence that suggested an opposite result).

Second, the ALJ improperly discussed Dr. Belcher's medical opinion as evidence to reject Plaintiff's subjective symptom testimony. AR 33. The ALJ noted that despite Plaintiff's clinical diagnoses, "Dr. Belcher remarked that the claimant's mental symptoms did not appear 'extreme' enough to limit his functioning in the workplace." *Id.* Dr. Belcher's report, however, stated that "claimant's *depressive* symptoms do not appear extreme enough to limit functioning in the workplace." AR 832 (emphasis added). Although Dr. Belcher specifically highlighted

Plaintiff's depressive symptoms, Dr. Belcher did not address whether the symptoms associated with Intermittent Explosive Disorder lead to a similar conclusion for Plaintiff's functioning in the workplace. Neither the ALJ nor Dr. Belcher explain how this opinion evidence referencing depressive symptoms undermined Plaintiff's credibility as to the other extreme interpersonal deficits he reports to suffer from. This opinion evidence is insufficient to reject Plaintiff's symptom testimony. *See Smolen*, 80 F.3d at 1283 (concluding that the ALJ erred by rejecting claimant's symptom testimony by limiting review of the medical records to certain impairments while, without explanation, he ignored medical evidence of the claimant's other impairments).

Additionally, the ALJ stated that "[i]n Dr. Belcher's opinion, the claimant's lack of success in the workplace 'would appear to be his own choice.'" AR 33. As support for that opinion, the ALJ noted that Dr. Belcher "observed that the claimant's longstanding mental impairments had not prevented him from holding a call center job for six years." *Id.* This is not clear and convincing evidence. The record establishes that Plaintiff did in fact hold one job for six years, but he held that job from 2000-2006—a full eight years before the alleged onset of Plaintiff's disability. *See* AR 324. This information is not probative of whether the psychological symptoms Plaintiff alleges affect a disability determination for a period beginning in January 2014, and the ALJ provided no further explanation for his decision to credit Dr. Belcher's opinion instead of Plaintiff's symptom testimony.

Further, Plaintiff's symptom testimony is consistent with other medical evidence in the record. For example, the record shows that Plaintiff sought psychological treatment and counseling from About Balance Mental Health in 2012, and treatment providers diagnosed Plaintiff with Manic Bipolar I and PTSD. AR 431. Plaintiff's treatment provider scored his psychological symptoms as "serious" on the symptom severity scale, a designation associated

with symptom severity causing "impairment in work, school, or social[.]" AR 434. Plaintiff
again sought psychological treatment and counseling from About Balance Mental Health
in 2015, and at that time his treatment notes show that Plaintiff experienced "intense mood
swings, depression, hypomania, anxiety, insomnia, loss of appetite, agitation, inability to think or
concentrate, paranoia and auditory hallucinations." AR 665. At a follow-up appointment in
December 2015, the treatment provider noted that Plaintiff scored as "moderate" on the symptom
severity scale at that time. AR 674. This session's treatment notes also conveyed that Plaintiff's
symptom severity for the previous two months was "serious." *Id.* Plaintiff's Pre-Social Security
Report from August 2017 with a DHS Disability Analyst, which occurred just a few weeks
before Plaintiff's examination with Dr. Belcher, indicated that in Disability Analyst's opinion "it
is obvious that functioning in a workplace or independently would likely not be doable for
[Plaintiff], socially or otherwise." AR 742. Plaintiff's long-term counselor, Ro Zientara, LPC,
echoed that same sentiment in May 2018 with her testimony that Plaintiff is "emotionally
unstable and unfit for regular work activity." AR 909. The medical evidence in the record thus
generally aligns with Plaintiff's symptom testimony.

The ALJ failed to discuss or explain how Dr. Belcher's clinical diagnosis of Intermittent
Explosive Disorder affected Plaintiff's subjective symptom credibility. The ALJ also failed to
explain his reasons for crediting a conclusory medical opinion that lacked corroborating evidence
in the record. Thus, the Court finds that the ALJ failed to provide the requisite specific, clear,
and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom
testimony. On remand, the ALJ must link specific symptom testimony with specific evidence in
the record if the ALJ discredits Plaintiff's subjective symptom testimony in full or in part on that
basis.

**B.  Testimony from Ro Zientara, LPC**

    **1.  Applicable law**

Effective March 27, 2017, the Social Security Administration amended its regulations and SSRs relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[3] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. §§ 404.1527 and 416.927 governs Plaintiff's claim.

These revised regulations incorporate the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion

---

[3] Among things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Zientara is a licensed professional counselor, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). In evaluating "other" source testimony, the error is harmless, for example, when the opinion is inconsistent with a medical source opinion, particularly one that specializes in the field, and is "therefore entitled to greater weight." *Id.* at 1112. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the

ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

### 2.  Analysis

The ALJ identified two reasons for rejecting Zientara's medical opinion testimony: the ALJ found (1) Zientara's opinion was inconsistent with Plaintiff's treatment session notes; and (2) Zientara's opinion was inconsistent with Dr. Belcher's clinical observations. AR 33-34. Plaintiff argues that those reasons were not sufficiently germane and were not supported by substantial evidence. Plaintiff also argues that the ALJ erred by failing to apply the appropriate regulatory facts when he evaluated this "other" medical source evidence and determined that Dr. Belcher's opinion outweighed Zientara's.

### a.  Consistency of Zientara's opinion and treatment session notes

The ALJ stated that Zientara's "own counseling notes include instances where the claimant interacted with others appropriately," and pointed to three examples from those notes that he found to be "not consistent with Ms. Zientara's report of emotional instability precluding employment." AR 33-34. Conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 111-12; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009)). Such statements, however, must be read in context of the overall diagnostic picture, and an ALJ should refrain from relying on selective examples that fail to reflect that context. *See Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014) (explaining reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of the claimant's symptoms) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01); *see also Holohan*, 246 F.3d at 1205.

The ALJ pointed to one instance in Zientara's treatment notes where Plaintiff successfully controlled his anger and turned an incident with his son "into a teaching moment 'instead of an anger outburst.'" AR 33. This evidence, however, is not demonstrative of the overall substance of Zientara's treatment notes. Instead, Zientara's treatment notes, when considered as a whole, offer a portrait of a person who often struggles to control his anger and who struggles to interact appropriately with his family and the outside world. *See, e.g.*, AR 859 (Plaintiff became "angry and agitated" when discussing his willingness to meet people who are different from him, stating his belief that people are "untrustworthy"); AR 876 (Plaintiff recounts "blowing up" at his wife); AR 883 (Plaintiff discussed his ongoing anger issues and his habit of making the "worst assumptions" about other's behavior); AR 894 (Plaintiff discussed frustration and difficulty maintaining a calm demeanor); AR 903 (Plaintiff reported feeling overwhelmed, angry, and "out of control"); AR 904 (Plaintiff stated he felt like he could "cry or hurt someone" because of his current mood); AR 927 (Plaintiff discusses a "blow-up" that happened with a family he allowed to stay in his home). The ALJ cherry-picked an example of Plaintiff exhibiting mental stability as a reason to discredit Zientara's testimony.

Another example from Zientara's treatment notes that the ALJ cited as evidence of inconsistency was when Plaintiff admitted he had fun playing drums for small children in the park. AR 33. The ALJ, however, failed to contextualize this example with other information from the treatment notes describing this incident. The treatment notes discussed how Plaintiff "spoke of the comfort he feels around children that does not extend to adults. . . . He spoke of the fun he was having and the comfort he felt, until other adults arrived, and he became self-conscious." AR 940. Properly contextualized, this example is not evidence of inconsistency or

conflict. This example is consistent with Zientara's opinion that Plaintiff was unable to interact appropriately with adults in a workplace environment.

The last example the ALJ cited as evidence of inconsistency between Zientara's opinion and treatment notes was Plaintiff's statement that "he found his mask-making business 'healing and meditative'" and that he was "excited by the business connections" he made with local people. AR 34. First, that Plaintiff expressed his mask-making was healing and meditative is consistent with Zientara's opinion that Plaintiff is unable to interact appropriately with others in a workplace setting. Mask-making is a hobby that Plaintiff engages in alone in his studio when he feels overwhelmed, nervous, or aggressive. *See* AR 70. Second, the ALJ omitted contextual information about the discussion between Zientara and Plaintiff in that treatment session: Zientara asked Plaintiff whether combining a therapeutic activity with the financial stressors of a business might sacrifice the healing and meditative aspects of the hobby. AR 944. Plaintiff expressed the need to "give more thought" to that idea. *Id.* Finally, as for the example of Plaintiff expressing excitement about making local business connections, this is another cherry-picked instance of a positive comment by Plaintiff in the midst of many comments conveying his frustration and problems with anger and personal interactions.

The Court finds that the ALJ's focus on these examples was selective and without the proper context. The ALJ cited inconsistencies within Zientara's opinion and treatment notes as a reason to reject her testimony, but the evidence he pointed to was cherry-picked from the treatment notes and lacked contextual information that was consistent with Zientara's opinion. The Court, therefore, finds that this is not a germane reason supported by substantial evidence to reject Zientara's "other" medical source testimony.

### b. Inconsistencies in Zientara's opinion and Dr. Belcher's clinical observations

The ALJ "noted that Ms. Zientara is not a licensed psychologist and her conclusions are inconsistent with Dr. Belcher's clinical observations." AR 33. The ALJ identified Dr. Belcher's clinical observations that Plaintiff "did not present as angry, but was 'normal and appropriate' while exhibiting 'fair' social skills and a cooperative demeanor" as evidence of the inconsistency. AR 33. Inconsistency with medical evidence can be a germane reason for discrediting the testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Like the rejection of a claimant's subjective symptom testimony, however, a lack of support in the objective medical evidence *alone* is not sufficiently germane to reject lay witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (emphasis added); *see also Deidrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (lack of support of "overall medical evidence" is not a sufficiently specific reason to reject lay witness testimony). Because the other reason relied on by the ALJ to discredit Zientara's testimony is insufficient, the Court cannot uphold the ALJ's rejection of this testimony based solely on a lack of support from Dr. Belcher's objective medical evidence.

### c. Application of regulatory factors

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p. That a source is an "acceptable medical source" sometimes entitles that

source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, and ALJ may properly find that an opinion from a medical source who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* An ALJ, however, is not required to consider every regulatory factor in every case involving opinions from "other" medical sources, "because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts of the case." 20 C.F.R. § 404.1527(f)(1).

Here, in determining that Dr. Belcher's observations outweighed Zientara's opinion, the ALJ seemingly focused his evaluation solely on one factor: consistency with the medical evidence. But the ALJ did not evaluate Zientara's testimony for consistency with the medical evidence as a whole—instead he evaluated it in relation only to Dr. Belcher's opinion and findings. The ALJ omitted discussion of the length of the treatment relationship in his evaluation, a regulatory factor specifically relevant to this witness.

Examining Zientara's testimony for consistency with the medical evidence shows that many of her conclusions are corroborated by other medical evidence. For example, Zientara's opinion that Plaintiff was "emotionally unstable" and "unfit for regular work activity" is supported by the observations of Plaintiff's mental health treatment providers at About Balance Mental Health. *See, e.g.*, AR 434, 674. Zientara's testimony is also consistent with Plaintiff's assessment in the Pre-Social Security Report from 2017. AR 742. The ALJ's failure to assess

Zientara's testimony for consistency with the medical evidence in total, rather than merely for consistency with Dr. Belcher's evidence, was an error.

Assessing the length of the treatment relationship is relevant to a reasoned determination about Zientara's testimony, but the ALJ appeared not to have considered this factor. Zientara established a long-term treatment relationship with Plaintiff beginning in June 2017 and has seen him weekly or bi-weekly since that time. AR 908. As a long-term treatment counselor, Zientara was particularly well-situated to observe Plaintiff's abilities and limitations. *See Moe v. Berryhill*, 731 Fed. App'x. 588, 591 (9th Cir. 2018) (noting the ALJ's failure to give germane reasons to reject long-term counselor's opinion in favor of the contrary opinion of the examining physician when substantial evidence did not support the ALJ's reasoning regarding alleged improvement in the counseling treatment notes, among other reasons) (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (recognizing nurse practitioner's prominent role in a claimant's treatment as claimant's primary care provider and who regularly examined the claimant during the relevant period))).

The Court agrees with Plaintiff that the ALJ erred in failing to consider the relevant regulatory factors. The Court does not conclude that the error is harmless. On remand, the ALJ should weigh Zientara's medical opinion evidence using the relevant regulatory factors to inform and explain his determination if he wishes to assign Zientra's opinion less than full credit.

## C.  Lay testimony of Plaintiff's spouse

### 1.  Applicable law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d at 1053. Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* The same as with "other" source medical testimony, an ALJ errs by

failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

### 2. Analysis

Plaintiff's spouse (Kia) echoed Plaintiff's testimony that his mental symptoms significantly impair his ability to function and noted that Plaintiff "does not do well around people" and "does not go out into public very often." AR 34. The ALJ credited this testimony "partial weight" because he noted that this testimony was not "entirely consistent with subsequent evidence of [Plaintiff's] mask-making business and associated attendance at local fairs and concerts." *Id.*

The record reflects two concrete instances of Plaintiff's attendance at local fairs and festivals where he tried to sell his masks at booths. AR 936-37, 943. The record also reflects subsequent mental decompensation after one of those instances. AR 368-69, 936-37. At the hearing, however, Plaintiff stated that he would try to sell his masks in less formal settings such as yard sales and "pop-up" booths in front of groceries stores. AR 71. This evidence of inconsistency is germane to this witness and is supported by substantial evidence. The Court therefore affirms the ALJ's decision to assign partial weight to Kia's testimony.

**D.  Remand and the Credit-as-True-Doctrine**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id*. If so, the district court can exercise its discretion to remand for an award of benefits. *Id*. The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id*. at 408.

Plaintiff urges the Court to exercise its discretion and credit the evidence the ALJ improperly rejected as true. The Court, however, finds that there are outstanding issues left to be resolved and the record has not been fully developed. Therefore, the appropriate disposition is to remand this matter to the ALJ for further proceedings.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 8th day of October, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge